## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **SERINA BOWEN,** | |
| **Plaintiff,** | **8:19CV270** |
| **vs.** | |
| **METHODIST FREMONT HEALTH, FREMONT HEALTH, MIDLAND UNIVERSITY, FREMONT COMMUNITY HEALTH RESOURCES, KAREN HAASE, KSB SCHOOL LAW, PC, LLO, MARK VOSS, in his individual and official capacity; JACKIE BEATEN, in her individual and official capacity; BETHANY CHILDERS, in her individual and official capacity; and MERRITT NELSON, in his individual and official capacity;** | **MEMORANDUM AND ORDER** |
| **Defendants.** | |

This matter is before the Court on the Motion to Dismiss filed by Defendants Methodist Fremont Health ("Methodist Health"), Fremont Health, Fremont Community Health Resources ("Community Health"), Mark Voss, Jackie Beaten, and Bethany Childers (collectively "Fremont Health Defendants"), ECF No. 51; the Motion to Dismiss filed by Defendants Midland University and Merritt Nelson (collectively "Midland Defendants"), ECF No. 55; and the Motion to Amend filed by Plaintiff Serina Bowen, ECF No. 67. For the reasons stated below, each motion will be granted in part.

## BACKGROUND

The following is a summary of facts alleged in the Second Amended Complaint, ECF No. 35, assumed true for purposes of the Motions to Dismiss.

Bowen began working for Fremont Health at the Fremont Health Medical Center in July 2014. She worked most recently as a Student Health Registered Nurse ("RN") and was placed at Midland University, an institution of higher education in Fremont, Nebraska. Bowen also worked intermittently as an athletic trainer for Midland University. Nelson was Midland University's Vice President for Student Affairs and was Bowen's immediate supervisor at Midland University.

Before October 2018, Voss was Manager of Community Health for Fremont Heath and Bowen's supervisor.[1] Childers was Director of Human Resources at Fremont Health. Beaten was Director of Public Relations, Marketing, and Volunteers at Fremont Health.

In September 2017, a female Midland University student disclosed to Bowen that she had been sexually assaulted off-campus. Pursuant to policy, Bowen referred the student to a counselor. Beginning in October 2017, and continuing for the duration of Bowen's employment, Nelson repeatedly demanded that Bowen provide him with confidential student/patient health information regarding that student and other Midland University students. Bowen repeatedly refused the requests, because she believed it was illegal for her to provide the information to Nelson. Bowen alleges that Nelson responded by humiliating, harassing, and micromanaging her, and changing her work expectations.

In January 2018, Bowen reported Nelson's requests and conduct, as well as her opposition thereto, to Childers and Deb Jurino, Risk Manager for Fremont Health. No action was taken in response.

---

[1] Fremont Health was a hospital doing business as Fremont Health Medical Center. Methodist Health owns, operates, and/or manages the hospital. Methodist Health resulted from an acquisition, merger, partnership, or other legal relationship between Fremont Health and Nebraska Methodist Health in October 2018. Community Health is an entity providing medical services in Fremont, Nebraska.

At some point,[2] Bowen sent an email to Defendant Karen Haase, an attorney and Director and Vice President of Defendant KSB School Law, PC, LLO, ("KSB"), a Nebraska Corporation, seeking confidential legal advice regarding Nelson's demands. Specifically, Bowen inquired whether it was unlawful to share confidential student health information with Nelson whether such disclosure would violate laws that regulated her nursing license. On March 7, 2018, a KSB employee telephoned Bowen and requested additional information. During this conversation, Bowen asked that future communications be sent to her personal cell phone or personal email account.

On March 11, 2018, Haase sent Bowen an email containing her legal advice, her legal opinion, and a memorandum of law. Haase copied Nelson on the email and included Bowen's initial email communication. Bowen did not consent to Haase sharing this information with Nelson. Later that evening, Nelson emailed Voss stating

> Mark, this is an e-mail I received from a school attorney . . . out of Lincoln. Ms. Haase is not one of Midland University's attorneys, however, it looks like [Bowen] must have reached out to her asking if the directives I have previously given [Bowen] were correct and legal . . . . I am infuriated by [Bowen's] actions . . . . I request that she no longer be part of the Midland University Student Health Department . . . .

Second Am. Compl., ECF No. 35, Page ID 110. Voss forwarded the email to Beaton the following morning.

On March 12, 2018, employees of Methodist Health, Fremont Health, and/or Community Health, directed Bowen to leave work immediately and report to a meeting at the hospital the following day. On March 13, 2018, Bowen met with Voss, Beaten, and Childers. Bowen was told that, due to the communication she had with Haase and KSB,

---

[2] Bowen alleges the email was sent on February 22, 2017. It appears the email was likely sent in February 2018. However, the exact date is not material for purposes of this Order.

Nelson refused to work with Bowen and she was terminated from her placement at Midland University. Bowen was also given the option to resign or be terminated from her employment with Fremont Health. At the meeting, Bowen inquired about other open RN positions and was told there were no positions available for her despite numerous open RN positions at the hospital. Bowen later applied for a position with the hospital but did not receive an interview. Bowen was also terminated from her athletic trainer position with Midland University on March 13, 2018.

In May and September 2018, Bowen filed charges of discrimination and retaliation with the Nebraska Equal Opportunity Commission ("NEOC"). In June 2019, Bowen initiated this action. She alleges violations of her First Amendment rights to free speech and association, tortious interference with business relationships, negligence, retaliation, sex discrimination, and certain claims under 42 U.S.C. § 1983, including conspiracy.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (citing *Iqbal*, 556 U.S. at

4

678), *cert. denied*, 135 S. Ct. 2941 (2015). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

Because many of Bowen's claims are not viable unless her Motion to Amend is granted, the Court will address her Motion to Amend first, and then each individual claim.

I.    <u>Motion to Amend Second Amended Complaint</u>

"The court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2). "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotations and citation omitted). A proposed amendment is futile if it could not survive a Rule 12 motion to dismiss. *In re*

*Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007). "A decision whether to allow a party to amend her complaint is left to the sound discretion of the district court . . . ." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008).

Defendants assert that Bowen's request to amend is futile. Midland Defendants also argue undue delay and prejudice, pointing to the number of proposed amendments, the time the case has been pending, and merits of the motions to dismiss.

Bowen's initial Complaint, filed on June 21, 2019, was not served on Midland University. In September 2019, she filed an Amended Complaint that was served on Midland University. On December 18, 2019, the Court granted Bowen's Unopposed Motion to Amend and she filed her Second Amended Complaint which added Nelson as a Defendant. On January 13, 2020, the Court granted the Midland Defendants an extension of time to respond. On January 27, 2020, the Midland Defendants filed a Motion to Dismiss. Bowen then requested leave to file a Third Amended Complaint and the Midland Defendants filed a brief in opposition. On March 6, 2020, Bowen requested leave to file a Fourth Amended Complaint. On March 9, 2020, the Court granted the Midland Defendants a ten-day extension to file a reply brief on their Motion to Dismiss. Bowen then withdrew her request to file the Third Amended Complaint leaving only Bowen's request to file her Fourth Amended Complaint.

Although Bowen has filed multiple complaints, this is her first request for leave to amend that was met with opposition. The Midland Defendants have not answered any previous complaint and they do not argue that discovery has commenced. Thus, if amendment is not futile, it will be allowed.

II.    <u>Sex Discrimination (Count VII)</u>

Bowen alleges Defendants Methodist Health, Fremont Health, Community Health, and Midland University discriminated against her due to her sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et. seq., and the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. § 48-1104. Title VII[3] prohibits employers from discriminating based on sex. 42 U.S.C. § 2000e-2(a). Absent direct evidence of discrimination, sex discrimination claims are analyzed under the framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014)). "To state a claim for gender discrimination, [Bowen] must allege that: '(1) she was a member of a protected class; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there are facts that give rise to an inference of unlawful gender discrimination.'" *Benson v. City of Lincoln*, No. 4:18CV3127, 2019 WL 1766159, at *5 (D. Neb. Apr. 22, 2019) (quoting *Fiero*, 759 F.3d at 878).

Bowen's Second Amended Complaint alleges no facts giving rise to an inference of unlawful sex discrimination. The proposed Fourth Amended Complaint remedies this defect. The Fourth Amended Complaint alleges Bowen is a female. Thus, she satisfies the "member of a protected class" requirement. *Carter v. United Food & Commercial Workers, Local No. 789*, 963 F.2d 1078, 1082 (8th Cir. 1992) (women are "a 'protected class' under Title VII"). She also alleges she was qualified for her job.

Bowen cites a denial of training opportunities and her termination as the athletic trainer as adverse employment actions. "An adverse employment action is a tangible

---

[3] The NFEPA is patterned after Title VII, and Nebraska courts have looked to federal decisions in analyzing claims brought under the Nebraska act. *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1124 n.3 (8th Cir. 2017) ("We analyze discrimination claims under the NFEPA by applying the same analysis for discrimination claims under Title VII.").

change in working conditions that produces a material employment disadvantage." *Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1131 (8th Cir. 2014) (citation omitted). "Such action 'might include termination, cuts in pay or benefits, and changes that affect an employee's future career prospects' but '[m]inor changes' are not enough." *Id.* (quoting *Wilke v. Dep't of Health & Human Servs.*, 638 F.3d 944, 954-55 (8th Cir. 2011)). "[A]n employer's denial of an employee's request for training is not, without more, an adverse employment action." *Box v. Principi*, 442 F.3d 692, 697 (8th Cir. 2006) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 737 (8th Cir.2004)). Bowen has generally alleged that the denial of training opportunities caused her to lose income but has not alleged any facts from which the Court could infer the denial was due to her sex. However, Bowen's allegation that she was terminated from her athletic trainer position and replaced by a male satisfies the last two prongs of the sex-discrimination framework. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944–45 (8th Cir. 1994) (in the context of a race discrimination claim stating that "[w]hile proof of replacement by a person outside the protected class will satisfy the fourth element, it is now well-settled that such proof is not required"); *Nettles v. Hytrol Conveyor Co., Inc.*, No. 3:15-CV-00123, 2016 WL 6089873, at *5 (E.D. Ark. Sept. 9, 2016) (citing *Kobrin v. Univ. of Minnesota*, 34 F.3d 698, 702 (8th Cir. 1994); *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1119 (8th Cir. 1997)) ("In a gender discrimination case, a plaintiff can satisfy the fourth element of the *prima facie* case by showing that she was replaced by someone of the opposite gender."); *but see Stith v. Chadbourne & Parke, LLP.*, 160 F. Supp. 2d 1, 13 (D.D.C. 2001) (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996) ("the fact that one's replacement is not in the same protected class as the discharged employee 'may help

8

raise an inference of discrimination, but it is neither a sufficient or a necessary condition.'"). Bowen will be granted leave to amend her Second Amended Complaint to add the allegations of sex discrimination related to her termination from her athletic trainer position, and Defendants' Motion to dismiss that claim will be denied as moot.

III.   <u>Retaliation (Count VI)</u>

Bowen alleges retaliation in violation of Title VII and NFEPA. "To establish a prima facie case of retaliation, [a plaintiff] must demonstrate (1) [plaintiff] engaged in statutorily protected activity, (2) [plaintiff] suffered an adverse employment action, and (3) a causal connection exists between the two." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007) (citation omitted). The Fremont Defendants argue Bowen did not allege she engaged in protected activity. The Court will address Bowen's Title VII and NFEPA claims separately.

   *A.  Title VII Retaliation Claim*

Title VII prohibits employers from discriminating against an individual based on race, color, religion, sex, or national origin. *Crawford v.  BNSF Ry. Co.*, 665 F.3d 978, 983 (8th Cir. 2012) (citing 42 U.S.C. § 2000e–2). "Title VII prohibits an employer from discriminating against an employee who 'has opposed any practice made an unlawful employment practice by this subchapter' or who 'has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'" *Barker v. Missouri Dep't of Corr.*, 513 F.3d 831, 834 (8th Cir. 2008) (quoting 42 U.S.C. § 2000e–3(a)). This includes opposition to "employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful." *Id.* (internal quotation and citation omitted).

9

Bowen's Second Amended Complaint contains no factual allegations supporting a claim of sex discrimination or a claim that she had a good faith, objectively reasonable belief that sex discrimination occurred. Thus, Bowen's actions did not constitute opposition to conduct she objectively and reasonably believed was unlawful under Title VII. Bowen also alleges that she filed NEOC charges in May and September 2018, but she does not allege that any adverse employment action was taken after April 2018.[4] Thus, she has not alleged that an adverse employment action was taken on account of Title VII protected activity.

Bowen's proposed Fourth Amended Complaint does not cure these defects. The only factual allegations supporting a good faith, objectively reasonable belief that sex discrimination occurred relate to Bowen's termination as the athletic trainer which allegedly occurred on March 13, 2018. Thus, any action taken before March 13, 2018, was not Title VII protected activity. The only allegedly protected activities that occurred after March 13, 2018, were Bowen's May 21, 2018, October 3, 2018, and August 8, 2019, NEOC and EEOC charges and her filing of this action in 2019. Yet she alleges no adverse employment actions that occurred after May 20, 2018.[5] Thus, Bowen's proposed Fourth Amended Complaint fails to identify any adverse employment action that took place as a

---

[4] Although Bowen's Second Amended Complaint and Fourth Amended Complaint refer to Fremont Health Defendants' refusal to hire her when she applied for positions after her termination, she does not specify when she applied for any of these positions.

[5] Bowen's Fourth Amended Complaint states that she filed sex discrimination and retaliation charges and that the athletic trainer scheduler was directed not to schedule her after she engaged in this protected activity. ECF No. 67-1, Page ID 260. Yet the basis of her sex discrimination claim is that she was replaced by a male with respect to her athletic trainer position, and her Fourth Amended Complaint alleges she was terminated from her athletic trainer position on March 13, 2018. The athletic trainer scheduler would not have scheduled Bowen after she was terminated and replaced. Bowen does not allege that she reapplied for any position after May 20, 2018.

result her *Title VII protected activity*. Accordingly, Bowen's request to amend is futile and her retaliation claim under Title VII will be dismissed without prejudice.

    *B.  NFEPA Retaliation Claim*

    Under NFEPA "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his or her employees . . . because he or she . . . (3) has opposed any practice or refused to carry out any action unlawful under federal law or the laws of this state." *McPherson v. City of Scottsbluff*, 931 N.W.2d 451, 462 (Neb. 2019) (quoting Neb. Rev. Stat. § 48-1114). "[A]n employee is protected by [NFEPA] from employer retaliation for his or her opposition to an act of the employer only when the employee reasonably and in good faith believes the act to be unlawful." *Oldfield v. Nebraska Mach. Co.*, 894 N.W.2d 278, 294 (Neb. 2017) (citation omitted). The Fremont Health Defendants concede that NFEPA's retaliation provision is broader than Title VII's, but they argue that Bowen's claim fails because she has not alleged a reasonable, good faith belief that Nelson's requests for information were unlawful.

    Bowen's Second Amended Complaint does not allege what law she believed Nelson was violating. Her Fourth Amended Complaint alleges she believed disclosure would violate the Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g; the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-119, 110 Stat. 1936; and Title IX of the Educational Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 *et seq*.

    FERPA prohibits federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002). "FERPA applies to most public and private postsecondary

11

institutions and, thus, to the records on students maintained by the campus health clinics and other health care facilities operated by such institutions." U.S. Dept. of Health & Human Services & U.S. Dept of Education, *Joint Guidance on the Application of FERPA and HIPAA to Student Health Record*, at *9 (2019), http://www.hhs.gov/sites/default/files/2019-hipaa-ferpa-joint-guidance-508.pdf.   "These records will be either education records or treatment records under FERPA both of which are excluded from coverage under the HIPAA Rules, even if the school is a HIPAA covered entity." *Id.* (citing 45 C.F.R. § 160.103). Bowen argues FERPA applies to Midland University.

Under FERPA, the exception contained in 34 C.F.R. § 99.31(a)(1)(i)(A) allows personally identifiable information from an education record to be disclosed without consent "if the disclosure is to other school officials, including teachers, within the agency or institution whom the agency or institution has determined to have legitimate educational interests." The Fremont Health Defendants argue Nelson had a legitimate educational interest in the records he requested because, under Title IX, Midland University was obligated to take immediate corrective action once put on notice of sexual harassment or sexual violence toward students.[6] Pursuant to 29 C.F.R. § 36.135, covered institutions must designate at least one employee to coordinate efforts to comply with and carry out its responsibilities under Title IX regulations.

In future summary judgment proceedings, Defendants may be able to present evidence demonstrating that Nelson had a legitimate educational interest in the records

---

[6] The Defendants' argument does not address alleged requests for records of other Midland University Students.

he requested. However, based solely on the allegations contained in Bowen's Fourth Amended Complaint, the Court cannot conclude that Bowen lacked a reasonable, good faith belief that Nelson's requests for information were unlawful. Thus, Bowen's proposed Fourth Amended Complaint states a plausible claim for retaliation under NFEPA; she will be allowed to amend her complaint with respect to her NFEPA retaliation claim; and Defendants' request to dismiss her NFEPA claim will be denied as moot.

IV.   Joint Employer[7]

Midland University argues that Bowen's sex-discrimination and retaliation claims against it should be dismissed because Midland University was not Bowen's employer, and her allegations are insufficient to support a claim of a joint-employer arrangement. Bowen does not address this argument in her Brief in Opposition but, instead, adds factual allegations to her Fourth Amended Complaint.

Midland Defendants rely on *Nichols v. Jones Lang La Salle Americas, Inc.*, No. 8:19-CV-35, 2019 WL 6341649 (D. Neb. Nov. 27, 2019) in arguing against a joint-employer relationship. In *Nichols,* the plaintiff's employer placed her at First Data as an administrative secretary. *Id.* at *1. She completed tasks related to her employer's management of First Data facilities using both entities' web platforms, and she took directions from First Data's Director of Properties who managed and directed the work of her supervisor. *Id.* Her employer did not share office space with First Data, but it had a separate space within the First Data facility. *Id.* at *4. At some point, First Data instructed plaintiff's employer to terminate her, and it complied. *Id.* at *2. Nichols brought retaliation

---

[7] In opposition to Bowen's joint-employment allegations, the Midland Defendants quote a paragraph from the agreement between Midland University and Fremont Health. This material was not contained within Bowen's Second Amended Complaint or Fourth Amended Complaint and, thus, will not be considered at this juncture.

claims under Title VII and NFEPA against the employer and First Data alleging they were joint employers. *Id.* The Court analyzed the employment relationship considering (1) the degree of interrelation between the operations, (2) the degree to which the entities share common management, (3) centralized control of labor relations, and (4) the degree of common ownership or financial control over the entities. *Nichols*, 2019 WL 6341649 at *3 (citing *Davis v. Ricketts*, 765 F.3d 823, 827 (8th Cir. 2014)). The Court determined that plaintiff had not sufficiently pled that her employer and First Data were joint employers. *Id.* at *5.

The interrelation-of-operations factor examines whether the two entities share managers, personnel, payroll, insurance programs, office space, and equipment. *Davis*, 765 F.3d at 827 (citation omitted). It also requires evaluation of whether the entities are operated as a single unit and whether the entities' functions and purposes are similar or distinct. *Id.* (citation omitted). Bowen's Fourth Amended Complaint alleges her placement as a Student Health RN at Midland University was pursuant to the "Student Health Clinic Services Agreement" between Midland University and Fremont Health. ECF No. 67-1, Page ID 252. Under the agreement, Fremont Health was responsible for providing the clinic with a registered nurse and appointing a program coordinator of services and a medical director to oversee day-to-day operations with cooperation and input from Midland University. *Id.* Midland University also agreed to oversee, operate, and manage the clinic. *Id.* at 253. Unlike in *Nichols*, it appears that Midland University and Fremont Health shared the clinic space to jointly operate the clinic for the purpose of providing student health services. Based solely on the language of the Fourth Amended Complaint,

14

with all reasonable inferences drawn in favor of Bowen, this factor weighs in favor of joint employment.

"The degree to which the entities share common management includes whether the same individuals manage or supervise the different entities or whether the entities have common officers and boards of directors." *Davis*, 765 F.3d at 828 (internal quotations and citation omitted). In *Nichols*, the Court determined that when the common management was only as a result of the contractual relationship, this factor disfavored a finding of joint employment. *Nichols*, 2019 WL 6341649 at *4. Bowen alleges only that Nelson was her immediate supervisor during her *placement* at Midland University. Thus, for purposes of this Order, the Court will assume this factor weighs against a joint employment relationship.

When considering the "centralized control of labor relations" factor in *Davis*, the Eighth Circuit considered who was responsible for employment policies, work schedules, salaries, hiring, firing, and discipline. *Davis*, 765 F.3d at 828. Bowen alleges that Voss and Nelson jointly supervised and evaluated Bowen, and jointly assigned her work. Fourth Am. Compl., ECF No. 67-1, Page ID 254. Bowen alleges Fremont Health and Midland University jointly created her performance evaluations and contributed to her pay. *Id*. She also alleges that she was required to conform to the rules, regulations, and procedures of both Midland University and Fremont Health. *Id*. Bowen was terminated after Nelson requested that she no longer be part of the Midland University Student Health Department. *Id*. at 258-59. As in *Nichols*, the Court finds this factor weighs in favor of joint employment. *See Nichols*, 2019 WL 6341649 at *4.

15

"The degree of common ownership or financial control asks whether one company owns the majority or all shares of the other and if the entities share common officers or directors." *Davis*, 765 F.3d at 828-29. Bowen alleges no facts supporting this factor.

Considering all four factors, the allegations in Bowen's Fourth Amended Complaint state a plausible claim that Midland University was a joint employer with respect to her Student Health RN employment.

The circumstances surrounding Bowen's employment as an athletic trainer are more uncertain. Her Fourth Amended Complaint states that she worked at Fremont Health and was most recently placed at Midland University as a Student Health RN. ECF No. 67-1, Page ID 252. She further alleges that she "also worked intermittently as an athletic trainer for Midland University and the Fremont Health Defendants." *Id.* It is unclear whether her athletic-training work was pursuant to the same agreement between Fremont Health and Midland University or some other arrangement. Nonetheless, she will be allowed to amend her Second Amended Complaint to assert joint employment with respect to her work as an athletic trainer, and the Midland Defendants' request to dismiss on these grounds will be denied.

V.   <u>Tortious Interference (Count IV)</u>

Bowen alleges Midland University, Nelson, Haase, and KSB engaged in tortious interference with her business relationship with Fremont Health and Midland University. "To succeed on a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the

interference caused the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted." *Denali Real Estate, LLC v. Denali Custom Builders, Inc.*, 926 N.W.2d 610, 626-27 (Neb. 2019) (citation omitted). Midland Defendants argue the tortious interference claim against them fails because Bowen has not alleged facts showing their actions were unjustified. Specifically, the Midland Defendants argue that truthful information cannot form the basis of a tortious interference claim.

"[A] person does not incur liability for interfering with a business relationship by giving truthful information to another." *Sulu v. Magana*, 879 N.W.2d 674, 682 (2016) (quoting *Recio v. Evers*, 771 N.W.2d 121, 133 (Neb. 2009)). "The truthfulness of the information provided correlates to whether the interference is unjustified. If the information provided is truthful, the interference is not unjustified." *Id.* (citation omitted).

Some of the allegations contained in Nelson's email, such as the fact that Bowen contacted Haase, clearly are true. Yet Bowen asserts that her Fourth Amended Complaint resolves the issue by stating "[m]any of Nelson's comments contained within the March 11, 2018 email to Voss regarding Bowen were false." ECF No. 67-1, Page ID 258. Bowen further requests that, if necessary, the Court grant her leave to add detailed information specifying which comments were untrue. Specifically, she seeks to add allegations that she was not insubordinate, did not lack trust, did not lack respect, and did not impact Nelson's ability to perform his job. Pl. Br. ECF No. 78, Page ID 311. The truthfulness of Nelson's allegations and whether his actions were unjustified is closely related to the propriety of his requests for student information. The allegations contained in Bowen's Fourth Amended Complaint, with her proposed additions, may state a plausible claim. Her request to amend is not futile and she will be allowed to amend her complaint with

respect to her tortious interference claim, stating with specificity which of Nelson's comments she claims were false.

Nelson also argues he cannot be held individually liable for tortious interference because he was acting in his capacity as Midland University's Vice President of Student Affairs. In support, he cites *Davis*, in which the Eighth Circuit affirmed dismissal of a tortious interference claim brought against the CEO of the plaintiff's former employer. *Davis,* 765 F.3d at 830. The Eighth Circuit stated "[u]nder Nebraska law, for a CEO to be held liable for tortious interference with business relations, there must be, at the pleading stage, some allegation that the action was taken for "'his or her own personal benefit," or for the benefit of an "entity other than the employer.'" *Id.* (quoting *Huff v. Swartz*, 606 N.W.2d 461, 470 (2000)). "One who causes intended or unintended harm to another by refusing to continue a [terminable-at-will] business relation with [that other,] . . . is not liable for that harm." NJI2d Civ. 17.01 (internal quotation and citation omitted). Bowen has not sufficiently pled facts demonstrating Nelson was acting outside his capacity as Midland University's Vice President of Student Affairs. Thus, any claims that Nelson or Midland University interfered with Bowen's employment with Midland University—if in fact she *was* employed by Midland University—will be dismissed. However, Nelson has not cited any authority demonstrating that Bowen cannot maintain an action against him for allegedly interfering with her employment with the Fremont Health Defendants. Thus, Bowen will be allowed to include Nelson as a Defendant in her amended claim for tortious interference with her business relationship with the Fremont Health Defendants.

VI.     First Amendment – Free Speech (Count I)

Bowen claims all Defendants (except Haase and KSB) violated her First Amendment right to free speech by retaliating against her due her protected speech.[8] Specifically, she alleges that she suffered retaliation because she 1) refused to provide confidential student records to Nelson, 2) reported Nelson's requests to Childers and Jurino, and 3) communicated with Haase about Nelson's requests.

The first inquiry in determining whether a First Amendment violation has occurred is "whether the employee spoke as a citizen on a matter of public concern." *Anzaldua v. Northwest Ambulance and Fire Prot. Dist.*, 793 F.3d 822, 833 (8th Cir. 2015) (citation omitted). "If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech." *Id.* (citation omitted). "A matter of public concern is a matter of political, social or other concern to the community." *Sparr v. Ward*, 306 F.3d 589, 594 (8th Cir. 2002) (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "To determine whether speech qualifies as a matter of public concern, we must examine the content, form and context of the speech, as revealed by the whole record." *Anzaldue*, 793 F.3d at 833 (quoting *Sparr,* 306 F.3d 594). The Fremont Health Defendants argue there is nothing about Bowen's alleged speech that demonstrated she was speaking out as a private citizen on a matter of public concern.

"A public employee's speech is protected under the First Amendment if he spoke as a citizen on a matter of public concern, but a public employee's speech is not protected if he spoke pursuant to his official duties." *Mogard v. City of Milbank*, 932 F.3d 1184, 1189 (8th Cir. 2019) (quoting *Groenewold v. Kelly*, 888 F.3d 365, 371 (8th Cir, 2018). "[U]nder

---

[8] Bowen brings the First Amendment claims against Fremont Health on the basis that it is a Nebraska political subdivision. Although Bowen's free-speech claim does not mention § 1983, Count III is a claim under § 1983, thus, the Court will discuss liability of all named Defendants.

the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Id.* (quoting *Lyons v. Vaught*, 875 F.3d 1168, 1170 (8th Cir. 2017)). "A public employee's speech is pursuant to his employment duties if it is part-and-parcel of the employee's concerns about his ability to properly execute his duties." *Id.* (quoting *Groenewold*, 888 F.3d at 371).

Bowen had access to Midland University confidential student/patient health information through her employment. Nelson requested this information and Bowen refused to provide it because she believed it was illegal for her to do so. Bowen alleges that Nelson responded by harassing, micromanaging, belittling, and humiliating Bowen; giving her contradictory work directives; and changing work expectations.[9] She reported his request and conduct, as well as her opposition thereto, to Childers and Jurino. Bowen's refusal to provide the information as well as her reporting to officials at Fremont Health were part-and-parcel of her concerns about her ability to execute her duties, thus, Bowen's speech was pursuant to her official job duties. Accordingly, she was not speaking as a private citizen on a matter of public concern and her speech is not protected.

Even if Bowen was speaking as a private citizen, her speech would be unprotected because it was not on a matter of public concern. When deciding if an employee spoke as a private citizen on a matter of public concern, "[i]t is not enough that the topic of an employee's speech is one in which the public might have an interest." *Sparr*, 306 F.3d at

---

[9] According to Bowen's Fourth Amended Complaint, Nelson responded by denying her training opportunities, micromanaging her work, harassing her, altering work expectations, and communicating with other Defendants, to have her terminated.

594 (citing *Morgan v. Ford*, 6 F.3d 750, 754 (11th Cir.1993)). The Court "must determine whether the purpose of the speech was to raise issues of public concern or to further the employee's private interests." *Id.* (citing *Morgan*, 6 F.3d at 754). "When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is primarily motivated by public concern." *Anzaldue*, 793 F.3d at 833 (quoting *McCullough v. Univ. of Ark. For Med'l Sci.*, 559 F.3d 855, 866 (8th Cir. 2009)). "If the main motivation for the speech was furthering [the employee's] private interests rather than to raise issues of public concern, her speech is not protected, even if the public would have an interest in the topic of her speech." *Id.* (quoting *Altonen v. City of Minneapolis,* 487 F.3d 554, 559 (8th Cir. 2007)). "While a public employee does not give up her right to free speech simply because her speech is private, . . . the internal nature of [the plaintiff's] speech is a factor to be considered." *Sparr*, 306 F.3d at 595 (internal citation and quotation omitted).

With respect to Bowen's email to Haase, Bowen argues she directed KSB to communicate with her via her personal cellular phone and/or personal email account demonstrating that she was speaking as a private citizen and not pursuant to her employment duties. According to Bowen, she sent the email to Haase "seeking confidential legal advice regarding the legality of Nelson's demands, to-wit: whether it was unlawful to share confidential student health information with unauthorized persons and whether such disclosure would violate laws that regulated her nursing license." Second Am. Compl., ECF No. 35, Page ID 108; Fourth Am. Compl., ECF No. 67-1, Page ID 256. Bowen further alleged that "the legal advice Plaintiff sought . . . involved matters of public concern, to wit: preservation and/or disclosure of confidential student health information

and/or compliance with Nebraska laws, rules, and regulations governing Registered Nurses practicing in the State of Nebraska." Second Am. Compl., ECF No. 35, Page ID 108. Fourth Am. Compl., ECF No. 67-1, Page ID 256.

There are no allegations that Nelson obtained information he was not authorized to possess or that Bowen sought to expose his alleged improprieties by sending the email. Bowen's email to Haase was communication seeking confidential advice about the legality of the actions she was being asked to take and their potential impact on her personal nursing license as opposed to an effort to raise issues of public concern. Thus, Bowen's email was not speech by a private actor on a matter of public concern. Similarly, Bowen makes no allegations demonstrating that her primary motive for refusing to provide Nelson the records he requested, or reporting his requests and conduct to Childers and Jurino, was to raise issues of public concern as opposed to self-preservation. Accordingly, her request to amend her First Amendment free speech claim will be denied as futile and the free speech claim contained in her Second Amendment Complaint, which is based on the same speech, will be dismissed without prejudice.[10]

VII.   First Amendment – Right to Association (Count II)

Bowen alleges all Defendants (except Haase and KSB) violated her right to association in violation of the First Amendment and § 1983 by firing, conspiring to fire, and refusing to employ her after she consulted Haase. "The Supreme Court has consistently recognized two types of protected associational rights: the right 'to enter into and maintain certain intimate human relationships' and the 'right to associate for the

---

[10] The Midland Defendants argue the First Amendment claims against them must be dismissed because they are not state actors. It is not necessary for the Court to address the Midland Defendants' arguments because Bowen has not sufficiently pled that she engaged in any protected speech.

purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Royer ex rel. Estate of Royer v. City of Oak Grove*, 374 F.3d 685, 688 (8th Cir. 2004) (quoting *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18 (1984)).

The Fremont Health Defendants argue that because Bowen's speech and, thus, her association was not on a matter of public concern her association claim also fails.[11] Bowen argues her speech and association involved matters of public concern. As discussed with respect to Bowen's free speech claim, her communication with Haase was not on a matter of *public* concern. Thus, Bowen's association did not involve a matter of public concern and the Court will dismiss Bowen's right to association claim and deny her request to amend as futile.

VIII.   Conspiracy (Count III)

Bowen's Second Amended Complaint alleges that "[t]he individually named Defendants (except for Defendant Haase) engaged in a conspiracy to violate the Plaintiff's constitutional and statutory protection rights in contradiction of 42 U.S.C. § 1983." ECF No. 35, Page ID 114. "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive [the plaintiff] of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citing *Askew v. Millerd,* 191 F.3d

---

[11] The Court notes that there is a circuit split as to whether the public concern requirement applies to association claims. *Palardy v. Township of Millburn*, 906 F.3d 76, 82 (3d Cir. 2018) (citations omitted). Bowen has not argued that the public concern requirement is inapplicable to her right-to-association claim, and the Court will not address this potential argument.

953, 957 (8th Cir.1999)). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.*

Bowen asserts the alleged First Amendment violations are the basis for her conspiracy claim. Pl. Br., ECF No. 61, Page ID 220. Her Second Amended Complaint states "[t]he conspiracy was based upon Plaintiff's free speech . . . and/or her association . . . ." ECF No. 35, Page ID 111-12. As discussed above, she has not stated a valid First Amendment claim in her Second Amended Complaint or proposed Fourth Amended Complaint. Thus, her request to amend is denied as futile and her conspiracy claim will be dismissed without prejudice.

IX.   Negligence (Count V)[12]

The Midland Defendants and the Fremont Health Defendants argue that Bowen's negligence claims consist of conclusory statements devoid of factual allegations. The Midland Defendants also argue that the Second Amended Complaint fails to allege facts to support any claim that Midland University owed a duty of care to Bowen.  She asserts that the defects can be cured by amendment

Bowen's Fourth Amended Complaint alleges Defendants owed her a duty of care not to violate her statutory and constitutional rights and not to retaliate against her. ECF No. 67-1, Page ID 261. Specifically, she asserts that Defendants were negligent in failing to hire employees who would not engage in the allegedly unlawful conduct that formed the basis of her other claims. Her failure-to-train and failure-to-supervise claims also rely on the allegedly unlawful conduct complained of in her other causes of action. Defendants

---

[12] The Court's analysis of Bowen's negligence claim relates only to the claims against Midland University, Methodist Health, Fremont Health, and Community Health, and not the claims against Haase or KSB.

argue that because all of Bowen's other claims fail, and her negligence claims are based on the same allegations, they also must also fail. Defendants do not specifically allege how Bowen's claims otherwise fail to state a claim and, thus, the Court will not discuss each of the claims individually. As stated above, the Court will allow amendment of Bowen's claim for sex discrimination and NFEPA retaliation. Thus, to the extent Bowen's negligence claims are based on conduct that allegedly violated these statutory rights, she will be allowed to amend her negligence claim and Defendants' request for dismissal will be denied as moot. To the extent Bowen's negligence claims are based on her First Amendment, Title VII retaliation, and conspiracy claims, they will be dismissed and her request to amend will be denied as futile.

X.      Punitive Damages

The Midland Defendants argue that Bowen's request for punitive damages should be dismissed, because the State of Nebraska does not generally allow punitive damages and Bowen has not pled a valid federal claim upon which to base a claim for punitive damages. "Under Title VII, punitive damages are available 'if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [her] federally protected rights.'" *Delgado v. GGNSC Grand Island Lakeview LLC*, 259 F. Supp. 3d 991, 1006 (D. Neb. 2017) (citing 42 U.S.C. § 1981a(b)(1)). Thus, at this juncture, Bowen's request for punitive damages will not be dismissed.

IT IS ORDERED:

1. The Motion to Dismiss, ECF No. 51, filed by the Fremont Health Defendants and the Motion to Dismiss, ECF No. 55, filed by Midland Defendants, are granted, in part as follows:

   a. Plaintiff's First Amendment free-speech claim is dismissed without prejudice;

   b. Plaintiff's First Amendment right-to-association claim and her corresponding § 1983 claim are dismissed without prejudice;

   c. Plaintiff's § 1983 conspiracy claim is dismissed without prejudice;

   d. Plaintiff's tortious interference with business relationship claim, as to her relationship with Midland University, is dismissed, without prejudice as to the Midland Defendants;

   e. Plaintiff's sex discrimination claim is dismissed without prejudice, except as to allegations that she suffered sex discrimination with respect to her termination from her athletic trainer position;

   f. Plaintiff's Title VII retaliation claim is dismissed without prejudice;

   g. Plaintiff's negligence claims based on her First Amendment, § 1983, Title VII retaliation, and conspiracy claims are dismissed without prejudice; and

   Defendants' Motions to Dismiss are otherwise denied.

2. Plaintiff's Motion to Amend, ECF No. 67, is granted, in part. Plaintiff may file an amended complaint, which for clarity should be captioned "Fifth Amended Complaint," in accordance with this Memorandum and Order, on or before May 1, 2020.

Dated this 16th day of April 2020.

BY THE COURT:


s/Laurie Smith Camp
Senior United States District Judge